# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JEFFREY SHARPE, | : | |
| Plaintiff, | : | Case No. 3:10cv00027 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| CITY OF SPRINGFIELD, *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

Plaintiff Jeffrey Sharpe brings this case *pro se* under 42 U.S.C. §§ 1983, 1985 and 1986 (*see* Doc. #2, p. 6) against the City of Springfield, Ohio (*id.*, ¶5); Clark County, Ohio (*id.*, ¶6); and numerous individual Defendants, including law enforcement personnel with both the Springfield City Police Division and the Clark County Sheriff's Department (*id.*, ¶¶7-11, 14-20); a Clark County assistant prosecutor (*id.*, ¶12); and a Clark County Common Pleas judge. (*Id.*, ¶13).

The Court previously granted Plaintiff's Application to Proceed *in forma pauperis* under 28 U.S.C. § 1915. (*See* Doc. #1). The case now is before the Court

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

for a *sua sponte* review to determine whether Plaintiff's Complaint, or any portion of it, should be dismissed because it is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

**Review under 28 U.S.C. § 1915(e)(2)(B)**

If a complaint raises a claim with an arguable or rational basis in fact or law, it is neither frivolous nor malicious, and it may not be dismissed *sua sponte*. *Brand v. Motley*, 526 F.3d 921, 923-24 (6th Cir. 2008); *see Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). A complaint has no arguable <u>factual</u> basis when its allegations are "fantastic or delusional." *Brand*, 526 F.3d at 923 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)); *see Lawler,* 898 F.2d at 1199. A complaint has no arguable <u>legal</u> basis when it presents "indisputably meritless" legal theories – for example, when "it is clear that the defendants are immune from suit," or when claims are premised on infringement of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327-28.

A claim that is barred by the applicable statute of limitations does not present an arguable or rational basis in law or fact and therefore may be dismissed as frivolous under § 1915(e)(2)(B). *Day v. E.I. Du Pont de Nemours & Co.*, 165 F.3d 27 [table], 1998 WL 669939, at *1 (6th Cir. ) (citing *Ashiegbu v. Kim*,

2

No. 97-3303, 1998 WL 211796 (6th Cir. Apr.24, 1998)), *cert. denied*, 525 U.S. 857 (1998). Furthermore, dismissal *sua sponte* of an *in forma* pauperis complaint is appropriate where the complaint is subject to an affirmative defense such as the statute of limitations and therefore is frivolous on its face. *Id.* (citing, *inter alia*, *McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th Cir.1997)).

**Factual and Procedural Background/Plaintiff's Claims**

Plaintiff filed his complaint on January 25, 2010,[2] alleging that many of the individual law enforcement Defendants violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by participating in an illegal search and seizure at his residence on August 12, 2005, culminating in his incarceration for a conviction that ultimately was reversed on January 25, 2008. (Doc. #2, ¶¶21-31); *see also State v. Sharpe*, 882 N.E. 2d 960, 974 (Ohio Ct. App. 2008). Plaintiff also charges that he was maliciously prosecuted and wrongfully imprisoned by certain other Defendants (Doc. #2 at ¶¶32-39), and that numerous Defendants conspired to violate his civil rights, and/or failed to

---

[2] Although Plaintiff's complaint formally was recorded as a separate docket entry on January **27**, 2010 (*see* Doc. #2), the document first was presented to the Court in conjunction with Plaintiff's *in forma pauperis* application filed on January 25, 2010. (*See* Doc. #1). The Court therefore will treat the complaint as having been filed on January 25, 2010. *Cf. Walker v. City of Lakewood*, 742 F.Supp. 429, 431 (N.D. Ohio 1990) ("although the date of filing of an *in forma pauperis* petition is not the technical date a Complaint is 'filed,' the date the pauper files the petition tolls the running of the statute of limitations until the Complaint is actually filed") (citing *Downton v. Vandemark*, 571 F.Supp. 40 (N.D.Ohio 1983)).

3

intervene to prevent that violation, through a pattern of "continuing violations" over a period of approximately 13 years preceding his unlawful conviction. (*Id.*, ¶¶40-92). Finally, Plaintiff contends that Defendant City of Springfield failed to properly train the Defendant law enforcement personnel under its control, leading to the violation of Plaintiff's civil rights. (*Id.*, ¶¶93-94). He requests equitable relief in the form of a declaratory judgment, together with compensatory and punitive damages, and any other appropriate relief. (*Id.*, pp. 20-21).

In overturning Plaintiff's criminal conviction, the state appellate court set forth an account of the factual circumstances underlying that conviction, as follows in pertinent part:

> [O]n August 12, 2005, officers of the Springfield Police Division were dispatched at about 6:00 a.m. to 861 Bellevue Avenue in Springfield on a domestic-violence complaint. When officers arrived there, they were met by . . . Sharpe's girlfriend[, who identified] that location, a single-family home, as Sharpe's residence. [The girlfriend] reported to police that she was the victim of an act of domestic violence that Sharpe had committed. Sharpe was not then present at the residence. After taking [the girlfriend's] complaint, police left and subsequently obtained warrants for Sharpe's arrest on a domestic-violence charge.
>
> At around 7:30 a.m. on that same date, police received a call indicating that Sharpe was at another location in Springfield, . . . had a gun and was threatening to

commit suicide.

Police received a third call concerning Sharpe at around 9:00 a.m. on that same date. The caller reported that Sharpe was seen entering his residence at 861 Bellevue Avenue through a rear window. Officers dispatched to that location were advised of the prior domestic-violence complaint, that warrants for Sharpe's arrest had been sought, and that Sharpe might have a firearm.

In addition to uniformed patrol officers, units of the Springfield Police Division Special Operations team were dispatched to 861 Bellevue Avenue . . .

Police remained outside Sharpe's residence during the following two to three hours, attempting to get Sharpe to come out . . . During the time police were there, no one else went in or came out.

* * *

Eventually, [a relative] was able to speak with Sharpe by telephone and convince him to surrender to police. Sharpe then came out of the residence through the front door. He was taken into custody and searched. No gun was found on his person.

[Current Defendant] Woodruff testified that police then entered Sharpe's residence to perform a "sweep search". . . to "check for the safety and welfare of any other individuals that may have been involved or been inside the house, due to the circumstances that had occurred prior to taking Sharpe into custody leading to the possible possession of a weapon, the threat of harm to himself, and the violence of the incident that occurred earlier against his girlfriend."

* * *

5

Officers emerged from the residence after the sweep search and reported that they had found drugs inside. Sergeant Woodruff asked Sharpe for his consent to search the residence, but Sharpe refused to consent. In its written decision denying Sharpe's motion to suppress evidence, the trial court found:

"Immediately after the protective sweep, the police obtained a search warrant and executed the same. In addition to seizing. . . marijuana, officers seized over 100 grams of powder cocaine and a loaded .45 caliber handgun."

The evidence police seized in the search they performed pursuant to the warrant is the basis of the charges against Sharpe . . . Sharpe entered not-guilty pleas.

Sharpe filed a motion to suppress evidence and two amended motions to suppress. In his second amended motion, Sharpe challenged the prior, warrantless protective sweep of his home by police. At the hearing on the motion to suppress, Sharpe clarified his objection, contending that the illegality of the protective sweep tainted the facts set out in the affidavit concerning drugs officers found in his house, on which the warrant to search the house for drugs was issued, requiring suppression of the evidence police seized when they executed the warrant and searched his home. The parties and the court proceeded on that basis.

After hearing the evidence offered, the trial court denied Sharpe's motion to suppress . . .

Sharpe entered a negotiated plea of no contest to the drug-possession charge . . . The state dismissed the remaining three charges . . . Sharpe was convicted on his no-contest plea and sentenced to a term of three years' incarceration and financial sanctions. Sharpe filed a timely notice of appeal.

*Sharpe*, 882 N.E. 2d at 964-66.

Finding that "after Sharpe was arrested outside his house, it was unreasonable for officers to enter his house without a warrant," and that "[b]ecause the entry was unreasonable, evidence seized pursuant to a search warrant based on probable cause obtained during the warrantless search must be suppressed," the appellate court reversed Plaintiff's conviction and sentence. *Id.* at 974. That reversal underscores Plaintiff's current complaint.

**The Applicable Civil Rights Statutes**

The primary federal civil rights statute on which Plaintiff's cause of action is premised provides as follows, in pertinent part:

> Every person who, under color of [State law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

A corollary statute addressing "[c]onspiracy to interfere with civil rights" provides for a private cause of action where "two or more persons conspire for

the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws . . ." 42 U.S.C. § 1985(2). In such instances, "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Finally, the United States Code also authorizes an "[a]ction for neglect to prevent" the foregoing violation, stating in pertinent part as follows:

> Every person who, having knowledge that any of the wrongs to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case, and any number of persons guilty of such wrongful neglect or refusal my be joined as defendants in the action . . . But **no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued**.

42 U.S.C. § 1986 (emphasis added).

**Analysis**

    *a.*     *Timeliness of Plaintiff's Claims Under Section 1986*

As noted *supra*, Section 1986 contains its own statute of limitations, providing that an action brought under that section must be "commenced within one year after the cause of action has accrued." The fact that Congress expressly provided that one year limitations period has been interpreted to preclude Section 1986 plaintiffs from extending the one-year limit by relying on state law tolling provisions, even where the conditions for such tolling may be met. *See Harris v. City of Canton*, 725 F.2d 371, 375 n.4 (6th Cir. 1984); *Walker v. City of Lakewood*, 742 F. Supp. 429, 431 (N.D. Ohio 1990).

In this instance, Plaintiff's action under Section 1986 is premised on purported conduct by various Defendants beginning in 1992 (*see* Doc. #2 at ¶41) and continuing for years thereafter (*see id*. at ¶¶43-91), through what Plaintiff's complaint terms "**the most recent act of deprivation** by the police, **on March 15, 2007**." (*Id.* at ¶92) (emphasis added). Even to the extent that Plaintiff's complaint could be construed to allege that later conduct attributed to Defendants also gave rise to Section 1986 liability, the very latest date mentioned in Plaintiff's complaint as giving rise to any cause of action is the Ohio Court of Appeals' January 25, 2008 reversal of Plaintiff's conviction. (*See id*. at ¶14); *see also State of Ohio v. Sharpe*, 882 N.E. 2d 960, 974 (Ohio Ct. App. 2008). As Plaintiff did not file

9

his complaint until two years later,[3] Plaintiff's claims under Section 1986 are time barred in their entirety by that Section's one year statute of limitations, and must be dismissed as frivolous. *See E.I. Du Pont de Nemours & Co.*, 1998 WL 669939, at *1; *McGore*, 114 F.3d at 609.

  b. *Timeliness of Plaintiff's Claims Under Sections 1983 & 1985*

Because 42 U.S.C. §§ 1983 and 1985, unlike Section 1986, do not contain their own statutes of limitations, actions brought under these Sections are subject to the limitations period applicable to personal injury torts in the state where the alleged violation occurred. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Ohio, the applicable limitations period is the two years provided by Ohio Rev. Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989, 992 (1989).

Nevertheless, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). Typically, the statute of limitations for filing an action alleging a constitutional violation begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). "[I]n determining when the

---

[3]*See* n.2, *supra*.

cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Id.* (additional citations omitted).

Because Plaintiff's complaint was presented to this Court in conjunction with his *in forma pauperis* application filed on January 25, 2010 (*see* Doc. #1), Plaintiff's complaint is timely only as to events occurring within two years prior to January 25, 2010. As noted *supra*, the very latest date mentioned in that complaint as an "event" giving rise to Plaintiff's action against Defendants is the Ohio Court of Appeals' January 25, 2008 reversal of Plaintiff's conviction, which was based on evidence obtained during the unlawful "sweep search" of Plaintiff's home. (*See id.* at ¶14); *see also State of Ohio v. Sharpe*, 882 N.E. 2d 960, 974 (Ohio Ct. App. 2008). The date of the reversal decision, however, does not establish the date on which Plaintiff's cause of action for the lawful intrusion accrued. "A cause of action accrues as soon as the plaintiff knows or should have known of the actual injury, regardless of when the plaintiff learns that the conduct at issue may constitute 'an actionable wrong.'" *Stanley v. Malone*, No. 2:07-cv-694, 2009 WL 485491, at *5 (S.D. Ohio Feb. 26, 2009) (Holschuh, J.) (citations omitted). In instances of unlawful search and seizure, the cause of action accrues when the injured person becomes aware that the search and

property seizure occurred, <u>not</u> when the warrant is legally adjudicated to have been defective. *See id.* In Plaintiff's case, that accrual date presumably would fall on August 12, 2005, the date on which several individual Defendants allegedly entered Plaintiff's home and conducted a warrantless sweep search. (*See* Doc. #2 at ¶¶21-22).[4]

Any potential argument for forestalling the accrual date of Plaintiff's cause of action until the Ohio appellate court reversed his conviction is negated by a careful reading of the decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and by post-*Heck* case law. The Supreme Court in *Heck* specifically recognized that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7 (emphasis added). In *Wallace*, 549 U.S. at 393, the Supreme Court acknowledged that "§ 1983 actions . . . sometimes accrue before the setting aside of – indeed, even before the existence of – the related criminal conviction."

---

[4]Even if Plaintiff did not realize the search's unlawful nature on the date that it took place, the fact that he sought to challenge the warrantless sweep by way of a motion to suppress demonstrates that he was aware of grounds for questioning the search's validity by no later than the date that such motion to suppress was filed. (*See, e.g.*, Doc. #2 at ¶35; *see also Sharpe*, 882 N.E. 2d at 966 ["In his second amended motion [to suppress], Sharpe challenged the prior, warrantless protective sweep of his home by police"]). *See Pethtel v. Washington County Sheriff's Office*, No. 2:06-cv-799, 2007 WL 2359765, at *9 (S.D. Ohio Aug. 16, 2007) (Holschuh, J.) (plaintiff's motion to suppress evidence found during allegedly illegal search "forecloses any finding that he did not know of his injury" until later).

12

Although the Court in *Wallace* alluded to the possibility that the running of the statute of limitations might be tolled during the time between a prospective plaintiff's conviction and the date that such conviction is set aside, *id.* at 394, the Court nonetheless declined "to adopt a federal tolling rule to this effect," and explicitly deferred to state law tolling provisions as to that issue. *Id.*

Decisions in this Circuit subsequent to *Wallace* have further clarified this point. In *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007), the Sixth Circuit acknowledged that the Supreme Court's decision in *Wallace* confirms *Heck*'s limited application in Section 1983 cases. Similarly, in *Eidson*, the Circuit Court noted that the Supreme Court's decision in *Wallace* "specifically held that *Heck* is not to be extended into the pre-conviction arena" because "the common abstention practice of staying the § 1983 action would afford adequate protection to the plaintiff." 510 F.3d at 639.

In this district, a plaintiff has been found to have had "a complete and present cause for action" for unlawful search and seizure under the Fourth Amendment as of the date of the defective search he was challenging, time-barred because he did not file suit within two years. *Pethtel v. Washington County Sheriff's Office*, No. 2:06-cv-799, 2007 WL 2359765, at *9 (S.D. Ohio Aug. 16, 2007) (Holschuh, J.). Also compelling are the similar circumstances in *Stanley*, *supra*,

where Judge Holschuh found that the plaintiffs' Section 1983 cause of action for unlawful search and seizure, having accrued on "the date of the search and seizure, and not on the date the state court finally determined that the seizure was illegal," was barred by Ohio's two year statute of limitations. 2009 WL 485491, at *5.

Ohio law has no tolling provision that would apply to this Plaintiff's circumstances, and those circumstances also do not warrant the extraordinary remedy of equitable tolling. Absent any grounds for tolling the running of the applicable two year statute of limitations, the period for bringing a Section 1983 action based on the unlawful search that took place on August 12, 2005 had lapsed long before Plaintiff filed his complaint on January 25, 2010. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (holding that Ohio Rev. Code § 2305.10's statute of limitations bars action in Ohio under 42 U.S.C. § 1983 if not brought within two years). Accordingly, Plaintiff's claims under Section 1983 are time barred and should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). *See E.I. Du Pont de Nemours & Co.*, 1998 WL 669939, at *1; *McGore*, 114 F.3d at 609.

The same conclusion follows as to Plaintiff's claims under Section 1985. Based on the allegations of Plaintiff's complaint, any cause of action for

conspiracy among Defendants to interfere with Plaintiff's civil rights accrued well before the Ohio appellate court's January 25, 2008 reversal of Plaintiff's conviction, and therefore accrued more than two years before Plaintiff filed his complaint here. As Plaintiff's Section 1985 also are time barred, they, too, are subject to dismissal in accordance with the applicable 28 U.S.C. § 1915(e)(2)(B) analysis. *See id.*

    c.    *Parties Immune From Suit*

Finally, Section 1915(e)(2)(B) also specifies that a complaint brought *in forma pauperis* should be dismissed to the extent that it "seeks monetary relief against a defendant who is immune from such relief." Claims against defendants who clearly are immune from suit have no arguable legal basis and should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2)(B). *See Neitzke*, 490 U.S. at 327-28.

"Generally, a judge is immune from a suit for money damages." *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9 (1991)). "Immunity from a § 1983 suit for money damages is no exception." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). This absolute judicial immunity can be overcome only for actions taken outside of the judge's judicial capacity or in the complete absence of jurisdiction.

15

*Id.* at 1115-16 (citing *Mireles*, 502 U.S. at 11-12). Similar immunity protects prosecutors acting in their prosecutorial capacity. *See Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989) ("[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties.") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)).

Plaintiff's complaint identifies Defendant Douglas Rastatter as "a judge for the Clark County Court of Common Pleas in Springfield, Ohio," and Defendant Daniel Driscoll as the "assistant prosecuting attorney for [ ] Clark County" assigned to the criminal case against Plaintiff at issue here. (Doc. #2, ¶¶13, 12, 32). The only allegations made against Defendants Rastatter and Driscoll are based on actions they allegedly took – or failed to take – in their respective roles as an Ohio Court of Common Pleas judge and a Clark County prosecutor. (*See id.*, ¶¶33-35).[5] Plaintiff's attempt to characterize those Defendants as having "stepped outside of" their "judicial role" (*see id.*, ¶¶33, 35) does not suffice to change the protected nature of their acts. As a result, Plaintiff's claims for damages from Defendants Rastatter and Driscoll should be dismissed under 28 U.S.C. § 1915(e)(2)(B) for the additional reason that those claims seek monetary

---

[5]These paragraphs allege that Defendant Driscoll "purposefully and maliciously . . . [continued to prosecute] the case against Sharpe when there was absolutely no basis" for doing so, and "conspired with Defendant Rastatter to assure Sharpe's motion to suppress would be overruled;" and that Defendant Rastatter "made a ruling that completely defied logic, common sense, and law" by denying Sharpe's motion to suppress. (Doc. #2, ¶¶33-35).

relief against individuals clearly immune from such relief. *See Neitzke*, 490 U.S. at 327-28.

**IT THEREFORE IS RECOMMENDED THAT:**

1. Plaintiff's Complaint be DISMISSED with prejudice;

2. The Court certify pursuant to 28 U.S.C. §1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied; and

3. The case be terminated on the docket of this Court.

February 23, 2010                          s/Sharon L. Ovington
                                                           Sharon L. Ovington
                                             United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).